IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.  No. 23-CR-1767-JCH

STEPHEN JAYMES MONTANO,

    Defendant.

### MEMORANDUM OPINION AND ORDER

This case is before the Court on Defendant Stephen Montano's *Motion to Dismiss the Indictment for Lack of Jurisdiction*, filed December 18, 2024 **(ECF No. 45)**. The Government filed a Response on January 2, 2025 **(ECF No. 46)**, and the Defendant replied on January 16, 2025 **(ECF No. 52)**. This Court held a hearing on the motion on January 28, 2025. Having considered the motion, briefs, evidence, arguments, applicable law, and otherwise being fully advised, the Court concludes that the motion should be denied.

I.     FACTUAL AND PROCEDURAL BACKGROUND[1]

John Doe ("Officer Doe") is an Officer in the New Mexico Department of Corrections ("NMDC") Security Threat Intelligence Unit ("STIU"). Crim. Compl. ¶ 6, ECF No. 1. A

---

[1] The parties agree that the circumstances surrounding the incident are explained sufficiently in paragraphs nine through 14 of Defendant's Motion. Accordingly, the Court refers to those facts in addition to those outlined in the sworn affidavit accompanying the Criminal Complaint.

Memorandum of Understanding ("MOU") exists between the NMDC and the United States Marshals Service ("USMS") establishing permanent USMS Violent Offender Task Forces ("VOTFs"). *See* Reply Ex. B, at 1, ECF No. 52-1. The VOTFs consist of federal, state, and local law enforcement authorities and exist for the purpose of locating and apprehending fugitives. *Id.* The primary mission of each VOTF is to investigate and arrest persons with active state and federal warrants for their arrest. *Id.*

The United States Department of Justice, USMS, issued Officer Doe a Special Deputation Oath of Office, Authorization and Appointment ("Form USM-3B") on August 16, 2022, appointing him to the Southwest Investigative Fugitive TF ("SWIFT") VOTF. *See* Mot., Ex. A, at 1, ECF No. 45-1. The Form USM-3B certifies that Officer Doe has been "specially appointed as a Special Deputy U.S. Marshal to perform the following duties as authorized by law: To seek and execute arrest and search warrants supporting a federal TF under Title 18 Authority." *Id.* The Form USM-3B also provides the following limitations: "Not authorized to participate in federal drug investigations unless deputized by DEA or FBI" and "not valid off duty." *Id.* The deputation expires August 31, 2025. *Id.*

On September 21, 2023, members of SWIFT, the New Mexico State Police ("NMSP"), and NMDC STIU were conducting a warrant operation in Grants, New Mexico. Crim. Compl. ¶¶ 4,5, ECF No. 1. NMSP Agent Sean Laursen led the operation with the goal of locating and apprehending individuals who had absconded from NMDC probation and parole. Mot. ¶ 11, ECF No. 45. Defendant had three outstanding state arrest warrants at the time and was one subject of the warrant operation. *Id.* ¶¶ 12, 21. NMSP Officer Adrian Diaz supervised the team tasked with locating and apprehending Defendant, who was described as an "absconder who had active warrants." *Id.* ¶ 12.

2

Officers, including Officer Doe, located Defendant's residence and positively identified Defendant sitting in a vehicle parked in front of the residence. Crim. Compl. ¶ 5, ECF No. 1. When commanded to exit from the vehicle, Defendant fled on foot. *Id.* ¶¶ 5,6. Officer Doe followed. *Id.* ¶ 6.

While being chased, Defendant ran through a small fence and attempted to mount a bicycle resting alongside the wall of a building. *Id.* As Officer Doe neared Defendant, Defendant threw the bicycle at Officer Doe. *Id.* The bicycle hit Officer Doe's legs, causing Officer Doe to fall and impale his left eye on a pipe protruding from the ground. *Id.* This rendered Officer Doe completely blind in his left eye. *Id.* ¶ 7.

Following the incident, state charges were filed against Defendant. Mot. ¶ 16, ECF No. 45. Once NMSP Officer Miles Salmons discovered that Officer Doe was a Task Force Officer ("TFO") with the USMS, he contacted the FBI with information regarding the investigation, including Officer Doe's federal commission. *Id.* ¶ 19. The case was then adopted on the federal level. *Id.*

Defendant was charged with one count of Assault Upon a Federal Officer Inflicting Bodily Injury, 18 U.S.C. § 111(a) and (b). Indictment, ECF No. 3. The Criminal Complaint references Officer Doe's current deputation under Title 18 of the United States Code and asserts that because Officer Doe is a sworn TFO in the USMS, a federal law enforcement agency, he meets the definition of a "federal officer" as set forth in 18 U.S.C. § 1114 and as required by 18 U.S.C. § 111(a). Crim. Compl. ¶ 8, ECF No. 1. Further, the Criminal Complaint alleges that Officer Doe was engaged in the performance of his official duties at the time of the incident. *Id.*

Defendant now moves to dismiss the Indictment for a lack of jurisdiction. Defendant argues that Officer Doe was not a federal officer as defined by 18 U.S.C. § 1114 at the time of the alleged

3

offense, so Defendant could not be charged with Assault Upon a Federal Officer Inflicting Bodily Injury, 18 U.S.C. § 111(a) and (b). Mot. 11, ECF No. 45. Specifically, Defendant alleges that there is no evidence that Officer Doe was or formerly had been a United States Deputy Marshal, and alternatively, there is no evidence that Officer Doe was assaulted while performing his duties as a United States Deputy Marshal. *Id.* In response, the Government argues that Officer Doe's deputation by the USMS was sufficient to confer him with federal officer status, and whether Officer Doe was performing his federal duties at the time of the incident is a question for the jury and not this Court. Resp. 3-5, ECF No. 46.

## II.  RELEVANT LAW

18 U.S.C. § 111 makes it a felony offense to forcibly assault, resist, oppose, impede, intimidate, or interfere "with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties." 18 U.S.C. § 111(a). Section 1114's protections cover "any officer or employee of the United States or of any agency in any branch of the United States Government (including any member of the uniformed services) while such officer or employee is engaged in or on account of the performance of official duties." 18 U.S.C. § 1114(a). Section 1114 also extends protections to those persons "assisting such an officer or employee in the performance of such duties or on account of that assistance." *Id.*

The federal officer requirement of § 111 is jurisdictional. *United States v. Feola*, 420 U.S. 671, 676 (1975). Whether the individual in question is a federal officer or is a person assisting a federal officer is a legal question for the Court. *United States v. Martin*, 163 F.3d 1212, 1214 (10th Cir. 1998). On the other hand, the determination of whether the individual "was engaged in the performance of federal duties" at the time of the offense is a factual question left to the jury. *Id.*

In making the legal determination about whether an individual is a federal officer, the Tenth Circuit and several other circuit courts have found an individual's cross-deputation or contractual authorization at the time of the offense to be sufficient evidence of federal officer status. *See id.* (finding detective from local police department was federal officer for purposes of § 1114 because officer was deputized to participate in federal investigation when charged conduct occurred); *United States v. Luna*, 649 F.3d 91, 102 (1st Cir. 2011) (concluding that local police officer who had been deputized as member of FBI's North Shore Gang Task Force was federal officer for § 111 purposes); *United States v. Diamond*, 53 F.3d 249, 251-252 (9th Cir. 1995) (concluding that local sheriff's deputy was federal officer for purposes of § 1114 because sheriff's deputy was cross-deputized as a special deputy U.S. marshal); *United States v. Bettelyoun*, 16 F.3d 850, 852 (8th Cir. 1994) (finding that tribal officers were federal officers for purposes of § 1114 where Bureau of Indian Affairs had delegated law enforcement functions to tribal officers by contract); *United States v. Nelson*, 579 F. Supp. 3d 1251, 1258 (D.N.M. 2022) (concluding that appropriately designated Homeland Security Investigations federal task force officer authorized to perform federal tasks was federal officer under § 1114). An individual may also be covered by the protections of § 1114 if they are "assisting" a federal officer, usually acting in cooperation with or under control of federal officers. *See United States v. Ama*, 97 F. App'x 900, 901-902 (10th Cir. 2004); *United States v. Williamson*, 482 F.2d 508, 512 (5th Cir. 1973). Section 111 is "intended to protect both federal officers and federal functions, and [] indeed, furtherance of the one policy advances the other." *United States v. Feola*, 420 U.S. 671, 679 (1975).

### III.   DISCUSSION

The Court agrees with the Government that Officer Doe's deputation as a Special Deputy U.S. Marshal is sufficient to confer federal officer status pursuant to § 1114.[2] The Attorney General is statutorily required to "establish permanent Fugitive Apprehension Task Forces consisting of Federal, State, and local law enforcement authorities . . . to be directed and coordinated by the [USMS], for the purpose of locating and apprehending fugitives." 34 U.S.C. § 41503(a). The USMS has the authority pursuant to 28 U.S.C. § 566(e)(1)(B) to "investigate such fugitive matters" as directed by the Attorney General. In accordance with this authority, the USMS entered into a MOU with NMDC on December 28, 2016, for the purposes of establishing a VOTF. Reply, Ex. B, at 1-4, ECF No. 52-1. The MOU states that the VOTF will consist of "law enforcement and administrative personnel from federal, state, and local law enforcement agencies," and that "[n]on-USMS law enforcement officers assigned to the task force will be deputized as Special Deputy U.S. Marshals." *Id.* at 2. Officer Doe was appointed to the SWIFT VOTF on August 10, 2022, and his deputation was not expired when the incident occurred on September 21, 2023. *See* Mot., Ex. A, at 1, ECF No. 45-1. Defendant states that he does not dispute the validity of Officer Doe's deputation. Reply 2, ECF No. 52 Accordingly, Officer Doe's deputation as Special Deputy U.S. Marshal was both statutorily and administratively valid at the time of the incident, and the validity of the deputation is sufficient to confer on Officer Doe federal officer status pursuant to § 1114. *United States v. Martin*, 163 F.3d 1212, 1214 (10th Cir. 1998).

Despite stating that he is not challenging the validity of Officer Doe's deputation, *see* Reply 2, ECF No. 52, Defendant makes two arguments that could be construed as attacking the validity of Officer Doe's appointment. Defendant argues that there is no evidence that Officer Doe had

---

[2] The Government does not contend that Officer Doe was assisting any federal officers at the time of the incident. Accordingly, the Court only considers Officer Doe's independent status as a federal officer for purposes of § 1114.

6

been, or ever was, a U.S. Deputy Marshal. Mot. 11, ECF No. 45. Alternatively, Defendant argues that Officer Doe's deputation does not make him an employee of the USMS or the federal government. Reply 13-15, ECF No. 52. The Court takes issue with Defendant's argument that there is no evidence that Officer Doe had been, or ever was a U.S. Deputy Marshal. The Form USM-3B clearly outlines Officer Doe's deputation as a Special Deputy U.S. Marshal, including his sworn oath, the terms of the special deputation, and the certification of the special deputation appointment. If Defendant is attempting to draw a distinction between U.S. Deputy Marshals and *Special* U.S. Deputy Marshals, that argument must fail as contrary to precedent, *see Martin*, 163 F.3d at 1214, and as contrary to Congress's goal of protecting both federal officers and federal functions. *United States v. Feola*, 420 U.S. 671, 679 (1975). Further, the Tenth Circuit has clearly stated that § 1114 does not require that the victim in question be a federal employee, as that requirement would also conflict with Congress's goal of protecting federal officers and federal functions, so Defendant's second argument also fails. *See Martin*, 163 F.3d at 1214-15 (citing *Feola*, 420 U.S. at 679).

Most if not all of Defendant's other arguments are misplaced. Rather than attacking Officer Doe's status as a federal officer, Defendant argues that Officer Doe was not engaged in the performance of his federal duties at the time of the incident—a question that is left for the jury. *Id.* at 1214. The Court here is limited to the narrow question of whether Officer Doe was a federal officer at the time of the alleged assault.

For example, Defendant argues that at the time of the incident, Officer Doe was acting in his capacity as a state correctional officer, carrying out state law enforcement activities by enforcing state warrants alongside other state officers. Reply 4, ECF No. 52. Defendant cites several cases in which courts grappled with the question of whether a state or local officer was

7

assisting a federal officer. *See e.g.*, *United States v. Reed*, 375 F.3d 340, 344-345 (5th Cir. 2004) (holding that Dallas police officer was not assisting FBI agent who was traveling to scene of crime in separate vehicle for post-arrest investigation); *United States v. Sapp*, 272 F. Supp. 2d 897, 906, 910 (N.D. Cal. 2003) (finding city and state officers were not assisting federal officers where operation was conducted "solely by state and local agents without participation or even direct knowledge on the part of federal agents"); *United States v. Smith*, 296 F.3d 344, 347 (5th Cir. 2002) (finding Dallas police officers were assisting FBI where Dallas police were acting pursuant to joint bank robbery task force with FBI and where Dallas police and FBI officers were in joint pursuit of suspected robbers). Importantly, the independent federal status of the officers involved in these cases was not in question; each case involved purely state and local officers, so the only question for purposes of establishing federal jurisdiction pursuant to § 1114 was whether they were assisting another federal officer. This Court faces a different question, that is, whether Officer Doe's special deputation rendered him a federal officer, independent of any assistance to other federal officers or of the nature of his actions.

Defendant also argues that a special deputation does not transform all official acts by a state officer into federal acts. Reply 10-12, ECF No. 52. Defendant cites *United States v. Pratt*, 913 F.2d 982, 987 (1st Cir. 1990), *United States v. Weiland*, 420 F.3d 1062, 1070 (9th Cir. 2005), and *United States v. Marshall*, 192 Fed. App'x 504, 512 (6th Cir. 2006) to support the proposition that federal officer status depends on more than just a deputation. However, these cases are not on point: *Weiland* and *Marshall* deal with the question of when a state law enforcement official becomes a federal officer for purposes of Federal Rule of Evidence Rule 41, while *Pratt* deals with whether an investigation was conducted primarily by state or federal law enforcement officers in order to determine whether to apply state or federal wiretap law. This Court is not concerned with

Officer Doe's acts at the time of the incident and the effect of his special deputation on those acts. It is the role of the jury to assess Officer Doe's actions and whether he was engaged in the performance of his official duties at the time of the incident.

Next, Defendant attempts to use the language of the MOU and Officer Doe's Form USM-3B to attack Officer Doe's status at the time of the incident. Reply 13-15, ECF No. 52. Defendant argues that Officer Doe's special deputation limits his authority to perform tasks to those "directed by an appropriate official of the United States Marshals Service or some other appropriate Federal Official." *See* Mot., Ex. A, at 1, ECF No. 45-1. Further, Defendant notes that according to the MOU, tasks are assigned to task force members once a case is adopted for investigation by the USMS Chief Deputy. And because, Defendant asserts, there is no evidence that the warrant roundup operation that Officer Doe was participating in when he was injured was one of these "tasks" assigned by the USMS, or that any USMS official directed Officer Doe to search for Defendant, Officer Doe was not acting pursuant to the MOU or his deputation so § 1114 and § 111 do not apply. But the Court understands this too, to be an argument that Officer Doe was not engaged in the performance of his federal duties at the time of the incident and rejects it.

Finally, Defendant urges the Court to look to precedent from 42 U.S.C. § 1983 cases for instruction on making a determination about an officer's federal officer status. Reply 15-17, ECF No. 52. However, the Court does not think it is necessary or helpful to analogize to § 1983 actions when there is case law from the Tenth Circuit directly on point. *United States v. Martin*, 163 F.3d 1212, 1214 (10th Cir. 1998). Accordingly, this argument is rejected.

## IV.   CONCLUSION

9

Because this Court finds that Officer Doe was a federal officer at the time of the incident in question, **IT IS ORDERED, ADJUDGED, AND DECREED** that Defendant's *Motion to Dismiss the Indictment* **(ECF No. 45)** is **DENIED.**

_____
**SENIOR UNITED STATES DISTRICT JUDGE**